## H. A. STODDARD

*v.*

## THE DECATUR CRACKER COMPANY.

184   53
s84a 374

*Opinion filed February 19, 1900.*

LACHES—*when delay by purchaser of stock bars suit to compel new corporation to exchange stock.* A delay of nearly seven years by the purchaser of stock after learning that it has previously been canceled upon the dissolution of the old corporation and the organization of a new one, in which the seller had refused to take stock, will bar his remedy to compel the new corporation to issue new stock in exchange for the old, where, in the meantime, the seller, who was a director in the old corporation, has died and his testimony as to the transaction is thereby lost.

*Stoddard* v. *Decatur Cracker Co.* 84 Ill. App. 374, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macon county; the Hon. EDWARD P. VAIL, Judge, presiding.

R. H. McANULTY, JOHN L. KING, and GEORGE A. WOOD, for appellant.

W. C. JOHNS, and MILLS BROS., for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a chancery proceeding begun by H. A. Stoddard in the Macon circuit court, May term, 1897, to compel the Decatur Cracker Company, (formerly the Decatur Steam Bakery,) a corporation, to issue to him 250 shares of its stock, and for general relief. In 1885 this corporation was organized as the Decatur Steam Bakery, with a capital stock of $10,000, divided into shares of $10 each, which were all subscribed for, Robert Carriens taking 250 shares. The business became embarrassed with debt, and on September 16, 1889, a special meeting of the stockholders was had pursuant to a published notice, the object of which meeting was to accomplish the financial relief of the corporation by increasing its capital stock.

At this meeting, according to the record of a minute of the secretary, a resolution was passed increasing the stock to $30,000. Several stockholders who were present testify that then, or at a meeting held soon thereafter, it was decided to re-organize the corporation, appropriate the assets of the old concern to the payment of the debts so far as they would go, and cancel the old stock. Then each stockholder was to have the privilege of subscribing to the new stock in proportion to his holdings in the old company, and for this new stock he was to pay cash in full. Instead of subscribing for new stock and regarding the old as canceled, Carriens, on October 8, following, sold his old stock to D. A. Barrackman, who three days later sold it to his wife, Maria L. Barrackman. Appellant, Stoddard, purchased it from her on May 12, 1890. No certificates of stock had been issued, and these transfers were made by bill of sale, recorded upon the records of Macon county but not upon the books of the corporation. About a month after making the purchase Stoddard went to the office of the company in Decatur to get his stock, but the company refused to issue it and refused to permit him to share in profits or to recognize his stock in any manner, and he was then fully informed of the act of the corporation by which his stock had been canceled. A proceeding was begun by him in 1891 to compel the corporation to recognize his interest and issue his stock, but for some reason that proceeding was abandoned by him. In that year the corporation changed its name to that of Decatur Cracker Company, and this cause was begun in 1897 against the company under its new name. The Decatur Cracker Company answered, and filed a cross-bill asking that the 250 shares be canceled. A special master heard the evidence and reported his conclusions, finding for complainant in the original bill. Upon the hearing by the court a decree was rendered dismissing the original bill for want of equity. An appeal was taken to the Appellate Court, where the decree was

affirmed, and by this further appeal we are now called upon to review the judgment of that court.

In defense to the bill appellee insists that at the time of the special meeting, September 16, 1889, the corporation was re-organized, with new stock amounting to $30,000, and the old stock was canceled; that Carriens, as stated, refused to subscribe for the new stock; that he afterwards sold his old stock, knowing it was valueless, and that he and the subsequent holders thereof are bound by the act of the corporation with reference to canceling the same and have no interest whatever in the new corporation, the old stock being worthless. Appellant insists the record contains no competent proof to establish the stockholders' agreement by which that stock was canceled, but, on the other hand, shows in him a clear right to 250 shares of the corporate stock and to have an accounting. The evidence does not satisfactorily show the transactions by which the corporation was re-organized, as the records containing the minutes are not produced. Two pages of a book, upon which the minutes of the meeting of September 16, 1889, were spread, were introduced, but the appellant objects to the competency of these as evidence. Robert Carriens died several years ago, and we are without competent proof showing what part he took in entering into the agreement to purchase new stock and cancel the old. Two of the directors and stockholders of the old company, however, testify that the business of the old company was completely wiped out and its affairs closed up at the time of the re-organization, and the old stock was canceled,—and this is the finding of the Appellate Court. Enough competent testimony appears, we think, to sustain this finding, and we are satisfied the conclusions reached by that court are right.

Even conceding there may be some question as to whether or not the corporation regularly and legally canceled this stock at the time of the re-organization,

appellant, we think, has waited an unreasonable length of time before bringing his action. Very soon after purchasing the stock in question he went to the office of the company and then received the information that it had been canceled and was now worthless. If he questioned the fairness or legality of the act of the corporation he should then have pursued his remedy, without an unreasonable delay. He remained silent until 1897,—almost seven years,—and then began the present proceeding. In the meantime Robert Carriens died. He was the original owner of this stock, had been a director in the corporation, and knew about the act of the corporation in winding up the affairs of the old company and the agreement of stockholders to cancel the old stock, if such an agreement was entered into. The rule with reference to the duty of a stockholder to sue within a reasonable time after obtaining a knowledge of the facts, in order to preserve his rights as such, is well stated in Cook on the Law of Stock and Stockholders, (sec. 686,) as follows: "After a stockholder has knowledge or is chargeable with knowledge of an *ultra vires,* fraudulent or negligent act of the directors, he must institute his suit, if at all, within a reasonable time. As to what will constitute a reasonable time depends upon the circumstances of the case. If it is evident that the stockholder is waiting to see whether the unauthorized act will be profitable to the corporation, the court will refuse to grant him any relief. So, also, if the stockholder, after a full knowledge of the facts, stands by and allows large operations to be completed or money expended or alterations to be made before he brings suit, he is guilty of *laches* and his remedy is barred,"—citing cases. Under the facts of this case we have no hesitancy in saying the delay on the part of appellant was unreasonable.

We are satisfied the Appellate Court properly disposed of all questions raised upon this record, and its judgment will be affirmed.    *Judgment affirmed.*